IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMILL JONES** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 23-4349** |
| **v.** | : | |
| | : | |
| **NORTHERN CHILDREN'S SERVICES** | : | |
| | : | |
| *Defendant* | | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                              AUGUST 20, 2024

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiff Jamill Jones ("Plaintiff") filed this employment discrimination action against his former employer, Defendant Northern Children's Services ("Defendant" or "NCS"), alleging violations of Title VII of the Civil Rights Act of 1964 (Title VII), and tortious conduct under Pennsylvania law. With respect to the alleged state tort claims, Plaintiff essentially asserts that his supervisor, John Cappo, and co-worker, Holton Carlson, defamed him to co-workers, subordinates, and supervisors, thereby damaging his personal and professional reputation.

Before the Court is Defendant's motion to dismiss *only* the state tort claims — defamation (Count VII) and invasion of privacy (Count VIII) — filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (ECF 4). Plaintiff opposes the motion. (ECF 9). The issues raised in the motion have been fully briefed and are ripe for disposition. For the reasons set forth herein, Defendant's motion is granted, *in part*.

**BACKGROUND**

When deciding a Rule 12(b)(6) motion, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The facts relevant to the instant motion, gleaned from the complaint, are summarized as follows:

> In August 2022, Plaintiff began his employment at NCS as a clinical manager in the mental health field. Plaintiff has significant experience in the mental health field, including, prior work experience and as an adjunct professor at Lincoln University teaching a course in Introduction to Psychology. (*See* Compl., ECF 1, at ¶ 8).
>
> John Cappo ("Cappo") was Plaintiff's immediate supervisor at NCS. Holton Carlson ("Carlson") was another supervisor as well as one of Plaintiff's co-employees. Shortly after being hired, Plaintiff observed a friendly relationship between Cappo and Carlson. Plaintiff also perceived that neither Cappo nor Carlson seemed "very happy or enthusiastic about his hire." (*Id.* at ¶ 11). As time passed, Cappo and Carlson made no attempts to integrate Plaintiff into the team and provided him with little to no training or insight into his job responsibilities.
>
> Plaintiff's coworkers informed him that Cappo and Carlson were making "repeated negative remarks about him, including that the[] plaintiff did not know what he was doing–that he was incompetent; they also disparaged the plaintiff's character and work ethic by verbally asserting to his peers, that he was 'lazy,'" despite the fact that Plaintiff was performing his work "in at least a satisfactory manner . . . ." (*Id.* at ¶ 13). Plaintiff was humiliated when he overheard Cappo telling another employee that Plaintiff was "lazy." (*Id.* at ¶ 17). Cappo also "would make false criticisms of the plaintiff's work, micromanage him, disparage him, pressure him, nitpick him, and treat him with a sense of disdain, none of which he did for the plaintiff's similarly situated peers." (*Id.* at ¶ 29).
>
> Plaintiff further alleged that the ongoing disparaging comments by Cappo and Carlson caused him to become psychologically ill. They tarnished his professional and personal reputation, "including to the plaintiff's coworkers and subordinates, diminishing his ability to properly lead and supervise." (*Id.* at ¶ 16). Plaintiff sought professional medical treatment for the "great emotional and psychological distress" he suffered because of Cappo and Carlson's negative treatment of him. (*Id.* at ¶ 15). In February 2023, Plaintiff resigned from his position for "health related reasons" as his psychological condition "worsened to an extent that he could no longer safely work for the defendant." (*Id.* at ¶ 32).

**LEGAL STANDARD**

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court "must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11.  The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (internal quotation marks and citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id.*  To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge his or her claims across the line from conceivable to plausible.'"  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

**DISCUSSION**

As noted, Defendant moves to dismiss only Plaintiff's defamation and false lights claims. Each of these claims and the parties' respective arguments are addressed below.

*Plaintiff's Defamation Claims (Count VII)*

At Count VII of the complaint, Plaintiff asserts defamation claims against Defendant based on the publication of false statements about Plaintiff's work performance to his coworkers,

3

supervisors, and subordinates. Defendant moves to dismiss these claims, arguing that the statements on which the claims are premised are unactionable opinions and/or privileged.

To satisfy the elements of defamation under Pennsylvania law, a plaintiff must plead facts sufficient to plausibly show:

> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
> (6) Special harm resulting to the plaintiff from its publication.
> (7) Abuse of a conditionally privileged occasion.

42 Pa. Cons. Stat. § 8343(a); *see also McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020). Thus, "[a] complaint for defamation must, on its face, identify specifically what allegedly defamatory statements were made, and to whom they were made." *Ari Bank v. Cmty. Coll. of Phila.*, 2022 WL 2905243, at *3 (E.D. Pa. July 22, 2022) (citing *Moses v. McWilliams*, 549 A.2d 950, 960 (Pa. Super. Ct. 1988)).

A statement is defamatory if it "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him" or if it "ascribes to another conduct, character or condition that would adversely affect his fitness for the proper conduct of his proper business." *Maier v. Maretti*, 671 A.2d 701, 704 (Pa. Super. Ct. 1996). "[T]he statement must do more than merely embarrass or annoy [him]; it must provoke 'the kind of harm which has grievously fractured [his] standing in the community of respectable society.'" *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (quoting *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004)). A court may dismiss a meritless defamation claim when the statements alleged are incapable of defamatory meaning as a matter of law. *See, e.g.*, *Gibney v. Fitzgibbon*, 547 F. App'x 111, 114 (3d Cir. 2013) (affirming dismissal of a defamation

claim because the "statement was not capable of a defamatory meaning as a matter of law"); *Tucker* 848 A.2d at 124 (noting that when the court finds an alleged defamatory publication is incapable of defamatory meaning, "there is no basis for the matter to proceed to trial").

*1. <u>Whether the Statements Were Capable of Defamatory Meaning</u>*

Whether an alleged defamatory statement is capable of defamatory meaning is a question of law to be decided by the court. *Blackwell v. Eskin*, 916 A.2d 1123, 1125 (Pa. Super. Ct. 2007) (citing *Tucker*, 848 A.2d at 124); *see also Gibney*, 457 F. App'x at 113 ("[I]f [a] court determines that [a] challenged publication is not capable of a defamatory meaning, there is no basis for the matter to proceed to trial." (internal quotations and citations omitted)). When applying Pennsylvania law, "[a] court must examine the meaning of the allegedly defamatory statement in context, and must evaluate the effect it is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Tucker v. Fischbein*, 237 F.3d 275, 282 (3d Cir. 2001) (internal quotation marks and citations omitted)).

"[I]n order for an opinion to be deemed capable of defamatory meaning under Pennsylvania law, it must reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." *Mallory v. S & S Publishers*, 260 F. Supp. 3d 453 (E.D. Pa. 2017) (quoting *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010)). "A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable this opinion may be or how derogatory it is . . . ." *Braig v. Field Commc'ns*, 456 A.2d 1366, 1373 (Pa. Super. Ct. 1983) (citation omitted). An unactionable expression of "pure opinion" "occurs when a person expresses a comment as to another's conduct, qualifications or character after either stating the facts on which

5

he bases his opinion or when both parties to the communication know the facts or assume their existence." *Rockwell v. Allegheny Health, Educ. & Rsch. Found.*, 19 F. Supp. 2d 401, 406 (E.D. Pa. 1998) (internal citations omitted).  Whereas an actionable expression of "mixed [opinion], is one which, while an opinion in form or context, is apparently based on facts regarding the plaintiff or his conduct that have not been stated by the defendant or assumed to exist by the parties to the communication." *Braig*, 456 A.2d at 1373.[1]

Plaintiff alleges that Defendant, through its employees Cappo and Carlson, defamed him "by repeatedly making and publishing false statements about him," specifically, that Plaintiff "did not know what he was doing," he "was incompetent," and he "was 'lazy.'"  (Compl., ECF 1, at ¶¶ 13, 56).  Plaintiff contends that "the assertions of [his] 'incompetence' and 'laziness' were based

---

[1] Pennsylvania has adopted the Restatement (Second) of Torts § 566, which provides, in relevant part:

> A defamatory communication may consist of a statement in the form of an opinion but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

Restatement (Second) of Torts § 566; s*ee also Green v. Mizner*, 692 A.2d 169, 174 (Pa. Super. Ct. 1997) (quoting § 566).  Comment (c) of § 566 clarifies the distinction between a non-actionable "pure" opinion and a potentially actionable "mixed" opinion:

> A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.  But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently.  The difference lies in the effect upon the recipient of the communication.  In the first case, the communication itself indicates to him that there is no defamatory factual statement.  In the second, it does not, and if the recipient draws the reasonable conclusion that the derogatory opinion expressed in the comment must have been based on undisclosed defamatory facts, the defendant is subject to liability.

Restatement (Second) of Torts § 566 comment (c).

on undisclosed defamatory facts." (Pl.'s Resp., ECF 9, at p. 10).  Defendant argues to the contrary, contending that these statements are unactionable opinions.

This Court must evaluate these allegedly defamatory statements in the context of their impact on the average listener.  *See Fischbein*, 237 F.3d at 282.  As such, this Court finds that the statement by Cappo that Plaintiff was "lazy" is a subjective viewpoint, incapable of defamatory meaning.  While calling Plaintiff lazy may have been offensive, as alleged, the statement is incapable of defamatory meaning because "communications which may annoy or embarrass a person are not sufficient as a matter of law to create an action in defamation."  *Gordon v. Lancaster Osteopathic Hosp. Ass'n, Inc.*, 489 A.2d 1364, 1369 (Pa. Super. Ct. 1985).  Further, the statement that Plaintiff was "lazy" amounts to a "merely caustic insult[] to which reasonable people would pay little heed."  *Purcell v. Ewing*, 560 F. Supp. 2d. 337, 344 (M.D. Pa. 2008).  Courts that have addressed the term "lazy" along with other similar insults have come to the same conclusion.  *See Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996) ("Among the terms or epithets that have been held (all in the cases we've cited) to be incapable of defaming because they are mere hyperbole rather than falsifiable assertions of discreditable fact are 'scab,' 'traitor,' 'amoral,' 'scam,' 'fake,' 'phony,' 'a snake-oil job,' 'he's dealing with half a deck,' and 'lazy, stupid, crap-shooting, chicken-stealing idiot.'").  "Moreover, the use of epithets, insults, name-calling, profanity and hyperbole may be hurtful to the listener and are discouraged, but such comments are not actionable."  *Tannous v. Cabrini Univ.*, 2023 WL 6465842 at * 8 (E.D. Pa. October 4, 2024) (internal quotation marks omitted); *see also Kryeski v. Schott Glass Techs.*, 626 A.2d 595, 601 (Pa. Super. Ct. 1993) (holding that statement that plaintiff was crazy was not capable of defamatory meaning).  As a hyperbolic insult, the statement that Plaintiff is "lazy" does not sufficiently support

7

a defamation claim as a matter of law. As such, the motion to dismiss Count VII with respect to the statement that Plaintiff was "lazy" is granted.

As to Plaintiff's allegations that Cappo stated he was "incompetent" and "did not know what he was doing," this Court finds the statements to be mixed opinion and, therefore, capable of defamatory meaning. The statements made by Cappo to Plaintiff's co-workers, subordinates, and superiors that Plaintiff did not know what he was doing implies the existence of undisclosed facts, namely, that Plaintiff was not performing his job satisfactorily. *See Fort Wash. Resources, Inc. v. Tannen*, 846 F. Supp. 354, 366 (E.D. Pa. 1994) ("[A]lleged statements [that plaintiff was incompetent] could be defamatory if others were told that defendant was performing incompetently when in fact he was not. If in fact defendant was actually performing well . . . but others in the field were told that defendant was not performing well, then it is possible that defendant's reputation in this field and his chances for another job could also be damaged."); *Frymire v. Painewebber, Inc.*, 87 B.R. 856, 860 (Bankr. E.D. Pa. 1988) (holding that employer's statements that employee did not produce satisfactorily on the job could be construed as being defamatory). Here, Plaintiff alleges he was performing his duties satisfactorily and argues that Defendant made statements about his work performance that implied facts to suggest the opposite. As such, at this stage of litigation, this Court finds that the statements that Plaintiff "was incompetent" and "did not know what he was doing" are capable of defamatory meaning as a matter of law.

   2. *Whether the Statements Were Privileged*

In its motion, Defendant also argues that the alleged statements were privileged and, thus, unactionable, since the only persons known to have heard the statements were Plaintiff's

8

supervisors. Plaintiff, however, argues that the statements were made solely to "bad mouth[]" him, "for no proper purpose" and, therefore, are not privileged. (Pl.'s Resp., ECF 9, at p. 10).

Under Pennsylvania law, privilege applies "to private communications among employers regarding discharge and discipline." *Maier*, 671 A.2d at 706. Additionally, communications are deemed conditionally privileged when they are made on a proper occasion, from a proper motive, and in a proper manner. *Id.* "A publication is conditionally privileged if the publisher reasonably believes that the recipient shares a common interest in the subject matter and is entitled to know." *Rockwell*, 19 F. Supp. 2d at 408. "[I]t is always for the court to determine whether the alleged defamatory publication is thus privileged." *Baird v. Dun & Bradstreet*, 285 A.2d 166, 171 (Pa. 1971). Once a statement is found to be conditionally privileged, the plaintiff may establish that the defendant abused that conditional privilege. *Michael Chicarella v. Frank S. Passant, et al.*, 494 A.2d 1109, 1113 (Pa. Super. Ct. 1985). Abuse of a conditional privilege is indicated when the publication:

> (1) is actuated by malice or negligence;
> (2) is made for a purpose other than that for which the privilege is given;
> (3) is made to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege; or
> (4) includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose.

*Beckman v. Dunn*, 419 A.2d 583, 588 (Pa. Super. Ct. 1980).

Here, the statements, as alleged by Plaintiff, were published by Cappo to Carlson, as well as to Plaintiff's co-workers, subordinates, and superiors. (Compl., ECF 1, at ¶ 56). At this stage of litigation, accepting the facts as true as the Court must, the statements made by Cappo do not appear to have been made in the context of a work evaluation, or any other legitimate purpose. In fact, Plaintiff categorizes the statements as "repeated negative remarks…[that] disparaged the

9

plaintiff's character and work ethic . . . ." (*Id.* at ¶ 13). Plaintiff alleges that he found out about these statements when "he began hearing from co-workers, including those on his work team" that Cappo was making negative remarks about his work performance. (*Id.* at ¶ 12). As such, the statements may have been made to Plaintiff's coworkers, which would indicate these statements were published to more individuals than necessary for the statements to be deemed privileged. *See Rishell v. R.R. Donnelley & Sons Co.*, 2007 WL 1545622 at *3 (E.D. Pa. 2007) (citing *Yetter v. Ward Trucking Corp.*, 585 A.2d 1022, 1024 (Pa. Super. Ct. 1991)) ("An employer may lose that privilege if the employer publishes such a statement to unauthorized individuals who do not have a common interest in the decision to discipline or terminate an employee."). This Court finds that Plaintiff has sufficiently pled facts to plausibly show that the statements that Plaintiff was "incompetent" and "did not know what he was doing" are not entitled to be considered absolutely privileged and, as alleged, also abused being conditionally privilege. As such, the motion to dismiss Count VII with respect to these statements is denied.

### *Plaintiff's Invasion of Privacy Claim (Count VIII)*

At Count VIII of the complaint, Plaintiff asserts a claim for invasion of privacy by false light. Specifically, Plaintiff alleges that Defendant "knowingly published . . . false information" and "intentionally depicted [Plaintiff] . . . as someone who was a poor performer, someone [who] was incompetent, [] someone who had a poor work ethic, and someone who was lazy." (Compl., ECF 1, at ¶ 62-63). Defendant moves to dismiss this claim, arguing that "[b]y affirming that the information is false, [Plaintiff] ensured that he cannot succeed in a claim for false light." (Def.'s Mot., ECF 4, at p. 12). Defendant is mistaken.

Pennsylvania has adopted the Restatement (Second) of Torts definition for invasion of privacy by false light. *Vogel v. W.T. Grant Co.*, 327 A.2d 133, 136 (Pa. 1974); *see also Doe v.*

*Wyo. Valley Health Care Sys., Inc.*, 987 A.2d 758, 765 (Pa. Super. Ct. 2009) (applying the Restatement to false light invasion of privacy claim).  The Restatement defines liability for false light invasion of privacy as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> > (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> > (b) the actor had knowledge of or acted in reckless disregard as to the *falsity* of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (emphasis added).  Accordingly, and contrary to what Defendant argues, *false statements* are actionable if they knowingly or recklessly paint the other person in a false light.  *See Doe*, 987 A.2d at 776 ("Furthermore, under Section 652E [of the Restatement], it is essential that the matter published concerning the plaintiff is *false*." (emphasis added)); *Santillo v. Reedel*, 634 A.2d 264, 295 (Pa. Super. Ct. 1993) ("In order for such a claim to be successful, appellant must show that a highly offensive *false statement* was publicized . . . ." (emphasis added)); *see also Casselli v. City of Phila.*, 54 F. Supp. 3d 368, 381 (E.D. Pa. 2014) (denying motion to dismiss false light claim when plaintiff alleged defendant disseminated false statements via flyer).

Here, Plaintiff has alleged that Defendant "knowingly published . . . false information" that depicted him in a false light to his co-workers, superiors, and subordinates.  (Compl., ECF 1, at ¶ 6263).  Defendant's argument that Plaintiff cannot succeed on his false light claim because false light invasion of privacy requires the "publication of *true information* in a way that casts the Plaintiff in a negative light," (Def.'s Mot., ECF 4, at p.8), is simply an incorrect interpretation of the law.  Accordingly, Defendant's motion to dismiss Count VIII of the complaint is denied.

**CONCLUSION**

For the reasons set forth, Defendant's partial motion to dismiss is granted, *in part*, as to the defamation claim premised on the statement that Plaintiff was "lazy." (Count VII). The motion is denied as to Plaintiff's defamation claims premised on the statements that Plaintiff was "incompetent" and "did not know what he was doing" (Count VII), and as to Plaintiff's false light claim (Count VIII). An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.